IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 24-cv-02740-SKC

GREGORY CARL WIND, JR.,

      Petitioner,

v.

ANDRE "MOSES" STANCIL, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Petitioner Gregory Carl Wind, Jr., is a state prisoner in custody of the Colorado Department of Corrections. He has filed *pro se* an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 18), challenging the validity of his conviction in Adams County District Court case number 19CR3041. Respondents filed an Answer (ECF No. 34). Mr. Wind was given the opportunity to file a reply but did not do so within the time allowed.

After reviewing the record, including the Amended Application, the Answer, and the State Court Record (ECF No. 24), the Court concludes that Mr. Wind is not entitled to relief.

1

## I.    BACKGROUND

### A.    State Court Proceedings

On direct appeal, the Colorado Court of Appeals ("CCA") recounted the events leading to Mr. Wind's conviction as follows:

> Wind described himself as a "non-citizen foreign national sovereign political power holder" who was not subject to the jurisdiction of the Colorado courts. He used the title "Emperor Messiah King Prophet©."
>
> In 2018, he faced charges in another criminal case. Judge Robert Lowenbach presided over the proceedings, and District Attorney James Houtsma prosecuted the case. During a pretrial hearing in that case, Wind asserted that the court lacked jurisdiction and told Judge Lowenbach, "[Y]ou need to recuse yourself. You're a dead fucking Judge. You're a fucking dead man. Get the fuck off my cases, bitch. Get the fuck off my cases, cunt."
>
> The case proceeded, and Wind was held at the Adams County Detention Facility during his trial on January 2 and 3, 2019. The jail's sergeant found graffiti written in pencil on the inside of Wind's cell door that said, among other things:
>
> - "Judge John Robert Lowenbach is a dead man";
> - "District Attorney James Houtsma is a dead man";
> - "Emperor Messiah King Prophet©";
> - "Holy War";
> - "I am God"; and
> - "God was in this cell January First 2019."
>
> Wind was the only inmate in the cell at the time, and the graffiti was not there before he was housed in the cell.
>
> The following week, a letter addressed to "the People of the State of Colorado" was delivered to the Adams County courthouse. The envelope was stamped as coming from the Adams County Detention

2

Facility. The return address said, "Emperor Messiah King Prophet© Gregory Carl Wind Jr." The letter was titled with Wind's case number and read as follows:

> John Robert Lowenback [sic]: Told you on 01-02-2019 A.D.
>
> Mark my words you are a dead man (GOD SPOKE)
>
> John is dead you have a hit on your head
>
> Don't go to sleep at night someone will take your life. Don't start your car a bomb may be under the seat You won't be safe at home a fire might start Your family is not safe Say goodbye Johny boy burn in hell (HOLY WAR)
>
> Emperor Messiah King Prophet©
>
> Let the wrath begin
>
> James Houtsma the same goes for you the 12 jurors too (GOD SPOKE)
>
> HOLY WAR (I AM YOUR GOD)
>
> (I will sacrifice the first human life!!!)

> The People charged Wind with retaliation against a judge, retaliation against a prosecutor, and attempt to influence a public servant. His trial was initially scheduled for July 2020 but, due primarily to the COVID-19 pandemic, he was not tried until a year later. The jury found him guilty as charged, and the district court sentenced him to twelve years in prison.

(ECF No. 8-5 at 2-4). The CCA affirmed Mr. Wind's judgment of conviction. (*Id.*).

## B.    Federal Habeas Proceedings

Mr. Wind commenced the instant action by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and paying the required fee. (*See* ECF No. 1). He presented the following claims in the Application:

1(a). Whether Colo. R. Crim. P. 24(c)(4), which permits a trial court to declare a mistrial if it is unable to safely assemble a jury due to a public health crisis, violates the separation of powers doctrine under the Colorado constitution because it "impermissibly broaden[ed] the statutory definition of mistrial" to include pretrial continuances.

1(b). Whether the trial court's declaration of a mistrial in reliance on Colo. Crim. P. 24(c)(4) resulted in a violation of Petitioner's statutory and constitutional speedy trial rights.

1(c). Whether the trial court violated Colo. R. Crim. P. 24(c)(4) by failing to make specific findings on the record in support of its declaration of a mistrial.

2. "Whether the court plainly erred where the prosecution presented evidence of three discrete incidents, it was unclear which ones supported which charges, and the trial court neither required an election nor gave a modified unanimity instruction."

3. "Whether the trial court violated Mr. Wind's due process and jury trial rights when it instructed the jury that it 'will' convict Mr. Wind if it finds the elements of each offense proven beyond a reasonable doubt."

4. "Whether the Adams County Sheriff's Department should have been determined to not be credible witnesses due to widespread corruption within the Department," *i.e.*, "falsifying training records and attempting to influence public servants."

(*Id.* at 7-15).

On initial review, Magistrate Judge Gurley issued an Order to Show Cause why the Application should not be dismissed as a mixed petition because it presented both exhausted and unexhausted claims. (*See* ECF No. 15). Specifically, Magistrate Judge Gurley found that Claims 1-3 were exhausted but Claim 4 was unexhausted. (*Id.* at 14).

On February 3, 2025, Mr. Wind filed the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 18), stating that he wished to

dismiss Claim 4 to remove the unexhausted claim. The Amended Application was then drawn (ECF No. 30) and reassigned to this Court for further proceedings (ECF No. 27).

On May 30, 2025, this Court determined that although Mr. Wind presented Claim 1(a) and Claim 2 to the CCA on direct appeal, both claims were procedurally defaulted and that Claim 1(c) was not cognizable in this action. (*See* ECF No. 30 at 8-15). Thus, the Court dismissed Claim 1(a), Claim 1(c), and Claim 2, and directed Respondents to file an answer addressing the merits of Claim 1(b) and Claim 3. (*Id.* at 16).

On June 27, 2025, Respondents answered Claim 1(b) and Claim 3, arguing that habeas relief should be denied. (*See* ECF No. 34). Mr. Wind has not submitted a reply to address Respondents' arguments, and the time to do so has passed.

The Court will now address the merits of Mr. Wind's remaining claims.

## II.    LEGAL STANDARDS

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Under § 2254(d)(1), the Court first must determine whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

If a clearly established rule of federal law is implicated, then, under § 2254(d)(1), the Court must determine whether the state court's decision was either "contrary to" or an "unreasonable application" of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 405-06.

A state court decision involves "an unreasonable application of" clearly established federal law when it "identifies the correct governing legal rule from

6

Supreme Court cases, but unreasonably applies it to the facts." *Williams*, 529 U.S. at 407-08. The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Claims challenging a state court's factual determinations are reviewed under § 2254(d)(2). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d)(2).

## III. ANALYSIS

### A.   Claim 1(b) – Speedy Trial

Mr. Wind claims that his statutory and constitutional speedy trial rights were violated when the state court declared repeated mistrials under Colo. R. Crim. P.

24(c)(4) and continued his trial date due to the COVID-19 pandemic. (ECF No. 18 at 10-17). Respondents answer that the statutory claim presents a question of state law not reviewable here, and that the CCA's decision concerning the constitutional claim was not an unreasonable application of clearly established federal law. (ECF No. 34 at 10-21).

The Court agrees that Mr. Wind's statutory speedy trial claim is not subject to federal habeas review.[1]

Next, the Court will recount why the CCA rejected Mr. Wind's constitutional speedy trial claim and then address whether 28 U.S.C. § 2254(d) provides any basis for habeas relief.

### 1. CCA's resolution.

The CCA first discussed additional facts relevant to the speedy trial analysis and then concluded that Mr. Wind's constitutional right to a speedy trial was not

---

[1] In Claim 1(b), Mr. Wind contends that his trial was held in violation of Colorado's speedy trial statute because Colo. R. Crim. P. 24(c)(4) was invalid and the court failed to make adequately specific findings in support of its mistrial declarations as required by Colo. R. Crim. P. 24(c)(4). This Court already rejected Mr. Wind's contentions regarding (1) the validity of Colo. R. Crim. P. 24(c)(4) as procedurally defaulted; and (2) the adequacy of the state court's findings under Colo. R. Crim. P. 24(c)(4) as a state law claim not cognizable in this habeas case. (*See* ECF No. 30 at 8-14). In addition, Mr. Wind's claim that his trial was held in violation of Colorado's speedy trial statute itself presents a question of state law, which does not provide any ground for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (decisions that rest on matters of state law—including a state court's reading of its own criminal law—are binding on a federal court).

violated.

### A.    Speedy Trial

The speedy trial statute requires a defendant to be brought to trial within six months of entering a not guilty plea. § 18-1-405(1), C.R.S. 2023. When a district court declares a mistrial, reasonable delays attributable to the mistrial, not to exceed three months, are excluded from the computation of time within which the defendant must be brought to trial. *People v. Sherwood*, 2021 CO 61, ¶ 3; § 18-1-405(6)(e).

Beginning in the spring of 2020, the COVID-19 pandemic caused major disruptions to the justice system in Colorado. The pandemic "made it virtually impossible to hold jury trials in criminal cases. Yet, defendants continue[d] to have a statutory right to speedy trial under section 18-1-405(1). This . . . unfairly placed our trial courts in a catch-22." *People v. Lucy*, 2020 CO 68, ¶ 34.

To address this challenge, on April 7, 2020, our supreme court amended Crim. P. 24 by adding subsection (c)(4). Rule Change 2020(07), Colorado Rules of Criminal Procedure (Amended and Adopted by the Court En Banc, Apr. 7, 2020), https://perma.cc/6DET-KNTH; *see People v. Eason*, 2022 COA 54, ¶ 12. As further amended on July 22, 2020, Rule 24(c)(4) provides as follows:

> At any time before trial, upon motion by a party or on its own motion, the court may declare a mistrial in a case on the ground that a fair jury pool cannot be safely assembled in that particular case due to a public health crisis or limitations brought about by such crisis. A declaration of a mistrial under this paragraph must be supported by specific findings.

Rule Change 2020(24), Colorado Rules of Criminal Procedure (Amended and Adopted by the Court En Banc, July 22, 2020), https://perma.cc/CET7-Z88V. "Rule 24(c)(4) doesn't limit the number of times a mistrial may be declared." *Sherwood*, ¶ 36. ¶ 11

Wind waived his right to a speedy trial in February 2020 to avoid having the trial during Ramadan. His trial was set for July 27, within his then-governing speedy trial deadline of August 12. But on July 17, the district court granted the prosecution a continuance on the basis that material witnesses would be unavailable due to the pandemic. Trial

was reset for October 26, 2020. Then — on October 21, 2020; December 1, 2020; January 20, 2021; and March 24, 2021 — the court declared mistrials pursuant to Crim. P. 24(c)(4). Trial was ultimately reset for July 28, 2021, and began on that date.

Wind contends that the district court erred in three ways: (1) by declaring mistrials, because Rule 24(c)(4) violates the separation of powers doctrine and is therefore unconstitutional; (2) by failing to make sufficient findings under Rule 24(c)(4); and (3) because the delay violated his constitutional right to a speedy trial. We address, and reject, each contention below.

. . .

### 3. Constitutional Speedy Trial Right

Finally, Wind contends that the delay in his trial violated his constitutional right to a speedy trial. We are not persuaded.

We review the district court's legal analysis of the constitutional right to a speedy trial de novo and its findings of fact for clear error. *People v. West*, 2019 COA 131, ¶ 8.

A defendant's constitutional right to a speedy trial attaches when formal charges are filed or with the defendant's arrest. *People v. Glaser*, 250 P.3d 632, 635 (Colo. App. 2010). To determine whether Wind's constitutional right to a speedy trial was violated, we apply a four-part balancing test. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *People v. Chavez*, 779 P.2d 375, 376 (Colo. 1989). We must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the desire for a speedy trial; and (4) whether the delay prejudiced the defendant. *Barker*, 407 U.S. at 530.

First, the length of the delay — from the filing of charges on July 29, 2019, to Wind's trial on July 28, 2021 — was two years. "Our jurisprudence suggests that the length of delay becomes presumptively prejudicial as it approaches one year." *West*, ¶ 14. Thus, this factor weighs in favor of finding a constitutional violation.

Second, the delay was due primarily to the pandemic. In *United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023), the United States Court of Appeals for the Tenth Circuit noted that "no circuit has yet published an opinion classifying COVID-19 delays under the second *Barker* factor" and held that "COVID-19 [is] a truly neutral justification

10

— not favoring either side." *Id*. Therefore, any delay attributable to the pandemic "cannot fairly be attributed to the government or to [the defendant]," *id*., and any delay not attributable to the pandemic — before July 2020 and after April 2021 — was due to Wind's scheduling preferences and hunger strike and thus weighs against him.

Third, Wind's repeated assertion of his speedy trial right weighs in his favor.

Fourth, the prejudice to Wind was minimal. There are "three interests in light of which a claim of prejudice should be assessed: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility the defense will be impaired." *People v. Nelson*, 2014 COA 165, ¶ 36. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (quoting *Barker*, 407 U.S. at 532). As to the first interest, Wind was already incarcerated (as the result of another criminal proceeding) when he was charged in this case. Further, under *Barker*, incarceration is to be accorded "relatively slight weight" when there is no showing of prejudice resulting from incarceration apart from the fact of imprisonment itself. *Glaser*, 250 P.3d at 648 (citing *People v. Hogland*, 37 Colo. App. 34, 38, 543 P.2d 1298, 1301 (1975)). As to the third interest, he does not argue that the delay impaired his ability to present a defense. Rather, he relies on the second interest, arguing that his "stress and anxiety" was "evident from his courtroom demeanor at his pretrial hearings." But as demonstrated by a transcript from Wind's prior case admitted as an exhibit at this trial, Wind's courtroom demeanor was the same before these charges were filed — ranting, attempting to leave, and threatening violence. So this factor weighs against him.

On balance, while we recognize that a substantial amount of time passed between the charging date and trial, the delay was caused primarily by the COVID-19 pandemic. The pandemic

> required thoughtful and careful consideration of how best to protect the many and varied users of our courts — litigants, attorneys, jurors, defendants, witnesses, victims, court staff, probation officers, and many others — from the spread of COVID-19, while continuing to hear as many cases as possible in a manner that safeguard[ed] defendants' constitutional rights.

*People v. Hernandez*, 2021 CO 45, ¶ 44. The district court here did everything it could to bring Wind's case quickly and safely to trial. And Wind has not demonstrated prejudice as a result of the delay.

We thus conclude that his constitutional right to a speedy trial was not violated.

(ECF No. 8-5 at 5-7, 16-20).

### 2. Application of § 2254.

The Sixth Amendment provides that a defendant in a criminal case has a right to a speedy trial. The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first. *See United States v. Marion,* 404 U.S. 307, 320-21 (1971). The Supreme Court has adopted a four-part balancing test to determine whether a constitutional speedy trial violation has occurred. *See Barker v. Wingo*, 407 U.S. 514 (1972). The four factors are: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his speedy trial rights, and (4) the prejudice to the defendant because of the delay. *See id.* at 530. No single factor is determinative; all four factors are related "and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

Under the first factor, the Supreme Court has held that a delay exceeding one year is sufficient to trigger the speedy trial analysis. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Under the second factor, the Court must ask "whether the government or the criminal defendant is more to blame for th[e] delay." *Id*. at 651. *See also Barker,* 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," but "[a]

12

more neutral reason such as negligence or overcrowded courts should be weighted less heavily.").

Concerning the fourth factor, prejudice to the defendant, the Supreme Court has identified three principal types of harm arising from the delay between formal accusation and trial: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett,* 505 U.S. at 654. *See also Barker,* 407 U.S. at 532 (recognizing the most important of these interests is impairment of the defense).

The CCA analyzed Mr. Wind's constitutional speedy trial claim by correctly identifying *Barker* as the controlling authority and by weighing the factors set forth in *Barker* in a reasonable manner. The CCA specifically found that two of the *Barker* factors—the length of the delay (two years) and Mr. Wind's assertions of his right to a speedy trial—weighed in his favor. (ECF No. 8-5 at 17-18). The CCA also found that the other two *Barker* factors—reason for the delay (COVID-19) and whether the delay prejudiced Mr. Wind—weighed against finding a constitutional violation. (*Id.* at 17-20). The CCA then concluded that Mr. Wind's constitutional right to a speedy trial was not violated. (*Id.* at 20).

First, the CCA reasonably found that the two-year delay was not a result of bad faith on the part of the government, and that most of the delay was attributable to the COVID-19 pandemic, a truly "neutral justification—not favoring either side." (ECF No. 8-5 at 17, quoting *United States v. Keith*, 61 F.4th 839, 853 (10th Cir. 2023)).

*See also Barker*, 407 U.S. at 531 ("a valid reason, such as a missing witness, should serve to justify appropriate delay"). The CCA further found that apart from the pandemic, the delays before July 2020 and after April 2021 were attributable to Mr. Wind's "scheduling preferences and hunger strike." (ECF No. 8-5 at 14-15, 18).

Second, the CCA reasonably concluded that any prejudice to Mr. Wind was minimal because he was already incarcerated as the result of another criminal proceeding when the charges in the relevant state court case were filed, and he specifically disclaimed any impairment in his ability to present a defense. (ECF No. 8-5 at 2, 18-19; ECF No. 8-2 at 26, arguing that he "need not show" that his defense was impaired). The burden of showing prejudice "lies with the individual claiming the violation and the mere 'possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated." *Jackson,* 390 F.3d at 1264); *see also United States v. Margheim,* 770 F.3d 1312, 1329 (10th Cir. 2014) (defendant must offer specific evidence of how the delay prejudiced him; failure to do so will "eviscerate" his claim). As such, the CCA reasonably determined that Mr. Wind did not carry his burden of showing prejudice.

Finally, the CCA further determined that Mr. Wind's argument of "stress and anxiety" as evidenced by his "courtroom demeanor at his pretrial hearings" was not supported in the record because he had exhibited the same "courtroom demeanor"—"ranting, attempting to leave, and threatening violence"—long before the charges in this case were filed. (ECF No. 8-5 at 19). *See also* State Court Record, Exhibits, People's Exhibit 1 at 1–11 (transcript from 2018 court appearance in a different case

in which Mr. Wind demonstrated the same demeanor, including repeated threats to kill the presiding judge). Thus, the CCA reasonably determined that Mr. Wind's only allegation of prejudice was contrary to the record and thus did not support a showing of prejudice.

In short, Mr. Wind fails to demonstrate that the CCA's application of *Barker* was objectively unreasonable such that no fair-minded jurist could reach the same conclusion. *See e.g., Jackson,* 390 F.3d at 1266-67 ("Habeas relief is only available if there is no possible balancing of the *[Barker]* factors that both supports the [state court's] ultimate decision and is not contrary to clearly established Supreme Court precedent."). Mr. Wind also fails to demonstrate that the CCA's decision was based on an unreasonable determination of the facts in light of the evidence presented. As such, habeas relief will be denied under § 2254(d) as to Claim 1(b).

### B.   Claim 3 – Jury Instruction

Mr. Wind next asserts that his due process and jury trial rights were violated when the trial court erred in instructing the jury that it "will" convict Mr. Wind if it finds the elements of each offense proven beyond a reasonable doubt. (ECF No. 18 at 10, 20-23). Respondents answer that § 2254(d) bars the claim because the CCA's decision was not contrary to, or an unreasonable application of clearly established federal law. (ECF No. 34 at 21).

The Court will recount why the CCA rejected this claim and then address whether § 2254 provides any basis for habeas relief.

*1. CCA's resolution.*

The CCA rejected Mr. Wind's jury instruction claim as follows:

### C.    Jury Instruction

Finally, Wind contends for the first time on appeal that the court violated his rights to due process and a jury trial by using language in a jury instruction that allegedly abolished the jury's power to nullify. We disagree.

We review Wind's unpreserved claim that the court failed to properly instruct the jury for plain error. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). As discussed above, "[a]n error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Rediger*, 2018 CO 32, ¶ 48.

After the jury was empaneled, the court provided introductory instructions on general principles of law as required by Crim. P. 24(a)(5). During those instructions, the court stated, as relevant here:

> If you find from the evidence that each and every element of the count has been proven beyond a reasonable doubt, *you will then find the defendant guilty of that count.* If you find from the evidence that the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you must find the defendant not guilty of that count.

(Emphasis added.)

At the close of the evidence, the court gave the same instruction using slightly different language:

> If you find from the evidence that each and every element of a crime has been proven beyond a reasonable doubt, *you should find the defendant guilty of that crime.* If you find from the evidence that the prosecution has failed to prove any one or more of the elements of the crime beyond a reasonable doubt, you should find the defendant not guilty of that crime.

(Emphasis added.)

16

Wind argues that the court's introductory instruction, as opposed to its instruction at the close of the evidence, the court used the word "will" instead of "should." Wind maintains that the court's "use of the word 'will' erroneously mandated that the jury find Mr. Wind guilty so long as the State proved the elements of each offense" and thereby abolished the jury's ability to nullify.

"Jury nullification is a jury's 'knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to [each] juror's sense of justice, morality, or fairness.'" *People v. Scott*, 2021 COA 71, ¶ 13 (quoting *People v. Waller*, 2016 COA 115, ¶ 57). "Jury nullification occurs when a jury acquits a defendant even though the members of the jury believe the defendant is guilty." *Id.* While a jury has a de facto power to nullify, courts should not instruct the jury of its power to nullify, encourage or promote nullification, or allow any argument or testimony about nullification. *Id.* at ¶¶ 17, 20-21.

In *Waller*, a division of this court addressed the same issue Wind raises on appeal. There, the division rejected the defendant's contention "that the trial court's general reasonable doubt instruction — instructing the jury that it 'will find the Defendant Guilty' if it found that the prosecution proved all elements of an offense beyond a reasonable doubt — abolished the jury's power to nullify and essentially constituted a directed verdict for the State." *Waller*, ¶ 77. The division reasoned that, while jurors have the power to nullify, courts need not promote nullification. *Id.* at ¶ 76.

We agree with *Waller* and follow it here. Accordingly, the district court did not err, much less plainly err, in instructing the jury.

(ECF 8-5 at 27–30).

### 2. *Application of § 2254.*

To demonstrate a constitutional error from a jury instruction in a state criminal trial, a habeas petitioner must show (1) an "ambiguity, inconsistency, or deficiency" in the instruction, and, (2) a "reasonable likelihood" that the jury applied the instruction in a way that relieved the State of its burden of proving every element

17

of the crime beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotation marks and citations omitted). *See also In re Winship*, 397 U.S. 358, 364 (1970) (holding that the Due Process Clause requires the prosecution to prove every element of a charged offense beyond a reasonable doubt); *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (explaining that the constitutional inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

In making this determination, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A "slight possibility" that the jury misapplied the jury instruction is not enough. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000). "[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive a petitioner of a fair trial and . . . due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that in considering a habeas claim based on an improper jury instruction, the court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable [or] erroneous") (quotations omitted)).

18

The pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

In addition, "there is no right to jury nullification," and a defendant is not entitled to jury nullification instructions. *See Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (citing *United States v. Thomas,* 116 F.3d 606, 615 (2d Cir.1997) ("the power of juries to 'nullify' or exercise a power of lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent")); *United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir. 1992) (recognizing that defendants are not entitled to jury nullification instructions).

Mr. Wind is not entitled to relief on Claim 3 under the "contrary clause" of § 2254(d)(1) because he does not identify any Supreme Court authority which would compel a different result. *See House,* 527 F.3d at 1018. Although Mr. Wind cites six Supreme Court cases: *In re Winship,* 397 U.S. 358 (1970); *Blakely v. Washington,* 542 U.S. 296 (2004); *United States v Guadin,* 515 U.S. 506 (1995); *Jones v. United States,* 526 U.S. 227 (1999); *United States v. Haymond,* 588 U.S. 634 (2019); and *Estelle v. McGuire,* 502 U.S. 62 (1991), none of these cases compel a different result.

First, the instruction Applicant challenges is consistent with controlling federal law. *See* State Court Record, Transcript 7/28/21 at 117-18 ("If you find from the evidence that each and every element of the count has been proven beyond a

reasonable doubt, *you will then find the defendant guilty of that count*. If you find from the evidence that the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you must find the defendant not guilty of that count."). This instruction correctly states the prosecution's burden of proof beyond a reasonable doubt and required the jury to hold the prosecution to that burden. Second, none of the cases Applicant references establish a constitutional right to jury nullification.

Because Mr. Wind fails to demonstrate that the jury instruction at issue in this case was so unfair as to deny him a fair trial, he fails to demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). *See Waddington*, 555 U.S. at 190-91; *Victor*, 511 U.S. at 66. Therefore, habeas relief is not warranted under § 2254(d) with respect to Claim 3.

## III.    CONCLUSION

For the reasons shared above, it is

**ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 18) is **DENIED** and this case is **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because Petitioner has not made a substantial showing of the denial of a constitutional right. It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**

**WITHOUT PREJUDICE** to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit. It is further

**ORDERED** that all pending motions, including ECF No. 38, are **DENIED** as moot.

DATED May 11, 2026

BY THE COURT:

S. Kato Crews
United States District Judge